Good morning, Your Honors. May it please the Court, Bradley Silverman on behalf of Appellant Agent Claudia Mulvey. Mr. Kirtley from the County Attorney's Office will be representing Appellant Officer Loyal and presenting arguments on behalf of him and Sgt. Sullivan. Mr. Whitelock will be presenting argument on behalf of Agent Breeden. Given the way the briefs have been set out, I would like to focus my argument today on the arguable probable cause element of the qualified immunity issue addressed by the District Court. We're here today seeking review of the District Court's denial of the officer's motions to dismiss the Section 1983 claims on the basis of qualified immunity. District Court concluded that the allegations of the consolidated amended complaint filed by the plaintiffs below were sufficient to arguable probable cause to seek warrants for the arrest of these officers. We believe that was error and we would like the courts to reverse. We've laid out in our brief why we believe the District Court was wrong. We think that my argument in my brief is that the court applied the incorrect legal standard in determining whether or not there was arguable probable cause in this case. And that if you apply the correct legal standard, that it's clear that these officers had arguable probable cause and that nothing that the plaintiffs have alleged was improper with the warrant applications was sufficient to overcome. Wasn't there arguable probable cause to believe even if you included everything in the underlying affidavits, that which was given to the judge and that which wasn't? All went in, let's just say. Wasn't there arguable probable cause to show that the officers owed fees for off-duty work and the officers failed to report off-duty work? Absolutely. And that's key. Okay. Tell me why. Because the issues that they've alleged in the complaint that were omitted, and that's important, we're talking about omissions here. There's no suggestion by the District Court that these officers lied or fabricated any evidence. These cases about alleged omissions, choices by the officers as to what to put in this affidavit, but even when you look at what they've alleged should have been in the affidavit, none of that goes to the evidence and statements and testimony in the affidavits by these officers about the failure to report off-duty hours. Okay, so what crime is that? Just let's look at that discrete crime. That would be the crime of, at least the crime of official misconduct. That would be the crime of official misconduct. Wouldn't it also be theft? Yes, I was going to get to that, Your Honor. Is it grand theft? I don't know what the threshold is. I don't know if it would reach the level of grand theft. Each one had a different value, and I don't know those values directly in front of me. Some of them were under $1,000. Some of them were in the mid-thousand, a few thousand dollars. And I don't have the breakdown exactly for just the under-reporting because the affidavits break down double reporting, under-reporting into different categories. Double reporting? Well, there was double dipping, what they were calling double dipping, which was working for outside employment and also collecting pay for working for them. But there certainly wasn't double reporting of off-duty hours when it worked. Correct, and my use of words might have been inartful. But there was overlapping, an allegation in the affidavit of overlapping hours, where they would put in for hours at off-duty employment, but then those hours reflected time that they also appeared to be paid for time they were on But all of the things that they talk about, talk about the authority of the police department, the town of Golden Beach, to charge them for the fee, and the record keeping, and everything that had to do with the hours that they actually did report to the town that they were working for these outside contractors. It doesn't address any of the evidence, any of the information in the affidavits that was presented to the state court judge in the warrant application. The hours that they worked, they never told the town about. So would that lay out a charge for fraud? It could support a charge for fraud, yes. But that fraud charge would be in addition to the overarching charge of official misconduct. These are police officers, they're public That's what these officers, Loyal and Mulvey, do. The Florida Department of Law Enforcement investigates public corruption. What I'm asking specifically is whether or not, if you include within the affidavits, that which was omitted, could a reasonable officer find or believe that there was arguable probable cause to believe that there was a fraud here? By the defendant officers? By the criminal defendants? Yes. By the plaintiffs? By the plaintiffs in the case. I'm talking about the plaintiffs, yes. Yes, Your Honor. I'm talking about Paez, Peters, and Diaz. Absolutely, Your Honor. I think even with the information in paragraph 29, if that information had been provided to the court, to the trial judge, along with the information that was in the affidavit, that probable cause would in fact still exist for the warrant. This is basically a Frank's type inquiry. Absolutely, Your Honor. Although the standard's different with arguable as opposed to actual probable cause. Correct. And we've made the argument in our briefs that we believe that the Frank's standard is met, both as to probable cause and arguable probable cause. Arguable probable cause is to the federal claims. There were state law claims for which the probable cause analysis would also apply as a defense. We argued everything below. We're here on an interlocutory review. The county has . . . Let me ask you this. There were four charges, one . . . well, four crimes charged. One had eleven counts. The others had a single count. Suppose we find there were arguable probable cause, after adding back in, subtracting out, and so forth, enough to support one, but not the other three. What effect does that have on the malicious prosecution claim? It's a complete defense, Your Honor. The law is clear that as long as there's arguable probable cause for any offense, it doesn't even have to be the offense sought for which the warrant was sought. I know that's the law as to arrest, because if you're arrested on one charge, you're arrested on four charges, you're still arrested, and the Fourth Amendment protects against the seizure. You're going to be seized if for one, if for all, et cetera. But is malicious prosecution different? Is the type of harm that you suffer, not seizure, that's the arrest, but the prosecutorial . . . the prosecution harm different if there are three charges that shouldn't be in there, because it's a tort, basically, to prosecute you on those three, but not on the first one. If we're talking about the tort of malicious prosecution in and of itself as a state law, independent state law claim, not in the context of the Section 1983 Qualified Immunity Analysis, I'm sure that I have an answer to Your Honor's question, I haven't thought about it. All right. As part of the 1983 . . . Well, if you look at it in the context of the 1983, then that question only comes into play in the question of whether or not there's been a Fourth Amendment violation, because that's an overriding question for qualified immunity, because in order to have a 1983 claim based on a concept of malicious prosecution, you have to have a seizure in violation of the Fourth Amendment, and then the state law, common law elements of malicious prosecution. So if the warrant was constitutionally valid, because there was arguable . . . well, because it was the Frank's analysis, there was probable cause for any charge, then you don't even make that threshold of the 1983 claim. But you would have had a seizure, but you would not necessarily have had the same harm from the seizure, would you? I didn't mean to interrupt, Your Honor. I think the way I would look at it is that if you had a constitutionally valid seizure, no Frank's violation, then you don't get in the court . . . But suppose the charge that there was arguable probable cause for, the bail would have been $5,000, but since you've got four others, the bail is $50,000. But if there's arguable probable cause, then the defendant . . . But arguable probable cause only to the one that would have gotten you $5,000 is my hypothetical. I understand that, Your Honor, but the law is that if there's arguable probable cause for any charge, the defendants are entitled to qualified immunity from the entire action. As to the seizure, but I'm not sure, and I guess that's a state law tort. Yeah, I mean, the district court would have to determine what to do with the district . . . with the state law cases, because we're here on the denial of a motion to dismiss. Except to the extent they feed into the 1983 malicious prosecution, because you have to satisfy the elements of the state . . . Well, no, Your Honor, because if this court finds that there was arguable probable cause, which again, as I said, if there was arguable probable cause, if the affidavits, after doing the Franks analysis, showed probable cause for any crime, then there's arguable probable cause, and there's qualified immunity from the entire . . . You're just repeating the conclusion, and I know that's a valid conclusion as to arrest, but I'm not sure it's valid as to the malicious prosecution claim. Well, I think that it grants the defendants, the officer defendants in this case, qualified immunity from the federal claims. And then what the district court does with the pendant state law claims may be a separate issue, but we're here on a review of a request for dismissal of the federal claims based on qualified immunity, and that would be the entire federal claim. Okay. To the extent that you were traveling on the theory of arguable probable cause for grand theft in the third degree, property stolen valued at $300,000 or more, but less than $5,000, according to the Paez affidavit, the value of the double billing in the case of Paez was $212, so you can't make that? Correct. And that was . . . Whether you include everything or not, there's just no way, arguable or not, there's just no probable cause, no arguable probable cause for grand theft. That's gone, isn't it? Well, for grand theft, perhaps, but the official misconduct . . . You say perhaps. I mean, is there any possible, plausible theory? I'm just pulling up the affidavit, Your Honor, so pardon me for a moment. In the Paez affidavit . . . Well, actually, what it says is that Sergeant Paez failed to report a total of 247.5 hours for an underreported total of $1,237.50. I'm talking about the value of the double billing in the case of Paez. It was $212.49. That was less than the $300, right? That's all I'm asking. Correct. Okay. That's the double compensation, correct. Thanks. That's all I was focusing on. Yes. Thank you, counsel. Thank you, Your Honor. Mr. Kirk. Good morning. May it please the Court. James Edwin Kirtley, Jr. Assistant County Attorney here for Appellants Loyal and Sullivan. I would like to add to Mr. Sullivan's comments about arguable probable cause. We do believe it is present when you add in the stuff that they say in paragraph 29 was left . . . But not present for all of the crimes? That may be correct, Your Honor. Now, what's your best one? I think that . . . The argument's been made that one is enough, but if you can't make one, then you lose and the district court got it right. So, you tell me, what offense was there arguable probable cause for, including within the materials for review, not just what was in the affidavit, but what ought to have been included? Right. So, I would say that the official misconduct charges, because those dealt with submitting false paperwork, that those would be ones which would be supported when you do the Franks analysis. Also, in the cases where the threshold amount that Your Honor mentioned before is met for grand theft, and in the case of Peters for the insurance fraud, to the extent that the insurance adjuster felt that what was not . . . The failure to pay the administrative fees arguably yields . . . official misconduct arguably yields fraud. Those are two distinct offenses, right? Correct. Which is the clearer of the two? Well, I think . . . Or you think the same evidence goes equally to both? I think it could go to both, Your Honor. I think you have the official misconduct with the paperwork submitted, but you also have the fraud to the extent that it was an incorrect or fraudulent statement about what actually had occurred. I also want to make the point that there's a couple of key allegations in paragraph 24 and also 36 of the complaint that the town of Golden Beach sort of led these officers down this path and had the opportunity to make clear that nothing had been done in the way of wrongdoing, but didn't do so at any point. They make that allegation even as to the three years between when the arrest affidavit was sworn out and the charges were dropped. And in the closeout memo, the prosecution makes the point that they had recently learned by depositions taken then that they could no longer support the charges to all reasonable doubt. And so I think when you consider those allegations together that the Golden Beach officials never made clear that no wrongdoing had occurred, then you have to think about what the officers actually knew, our officers actually knew, at the time they swore out the affidavit. And so I don't think they've adequately pled that our investigating officers knew all of that stuff in paragraph 29 that they claim we left out at that time. So I would point that out to the court. Secondly, even if we did know those things, those things are at best defenses, conflicts in the evidence. This is not DNA evidence. This is not a situation where you have a video that would exonerate them, things that we left out in that manner. And we believe that under this court's precedents, particularly Dahl v. Holley, that an officer is allowed to make judgments, even reasonable misjudgments with arguable probable cause, as to what the significance of those competing pieces of evidence are. And we think they did that appropriately here even under the allegations. I'd like to move in now to clearly established law. The appellees have argued and the district court found that the law was clearly established at the time that the arrest affidavits were sworn out that an officer may not lie in an arrest affidavit. And that's problematic on two levels. One, it's too general. And two, that's not these facts. First it's too general because the Supreme Court has said that courts should not define qualified immunity or the clearly established law for qualified immunity purposes at a high level of generality. To say that an officer cannot lie in an arrest affidavit is like saying an officer cannot affect an arrest with excessive force. It doesn't tell us anything about what an officer in a particular circumstance can do. No, because cannot lie is not application of law to facts. Cannot lie is a historical fact. Either told the truth about something or intentionally did not tell the truth. But on the other hand, the other example you give is not a historical fact or pure historical fact. So why is an officer can't lie in an arrest affidavit about a material fact? Why isn't that so obvious it doesn't need any previous decision directly on point as to what the lie is? Your Honor, I think the way that I would answer that is to say that because you're dealing with probable cause, it's always fact intensive. And so. Which is why it's important not to lie. Correct. Correct, Your Honor. But here, and that would pivot into my second point, which I would say here, this is not a case where the officers are alleged to have just blatantly lied about what happened. It's whether they failed to appreciate certain evidence that might have cut in favor of the plaintiffs and whether they should have included that. And I think that that's the circumstance that the law needs to be clearly established under for purposes of this case. So you're saying they didn't intentionally lie? Correct. There are in this complaint, knowingly. So then the problem with stating the law is clearly established that you can't lie in an affidavit is it should have been qualified. If the law is clearly established or anybody would know, it's so obvious that you can't intentionally lie about a material fact in an affidavit. I think that would be a fair revision, Your Honor. But again, it must be particularized to the particular context that you're in. It can't be. The law is only clearly established that you can't lie about material facts relating to whether the officers reported all off-duty work in an affidavit unless we've got a case on point on that. It's not a denial of qualified immunity. It can't be that. In other words, you're saying it doesn't have to be that specific? It can't be that specific. Correct. Otherwise, you would always have qualified immunity no matter what you lied about until we had, you know, a century or more in the future had covered all possible permutations of lies that you could come up with. Right. No, I would agree with that, Your Honor, but I think that you do need something in a case like this where you have an investigation that went on for a year and a half, multiple sources of information, a town government that cooperated with the investigators. Does that mean that an agent can knowingly lie on an affidavit presented to a judge about a material fact and you'd still get qualified immunity if there's no case that said that? I would have thought that some things have such obvious clarity that a law enforcement officer would have to know that he can't lie about a material fact in seeking a warrant. And if he does, he doesn't need a case. He doesn't need a case on point. I mean, I don't need a case to shield. You understand what I'm getting at. I'm hard-pressed to understand how it could be that an officer could get qualified immunity knowingly lying about a material fact on the theory that, well, there's no case that told him he couldn't. Counselor, are you speaking explicitly of lying or the extent to which the officer relied on other information provided to him by colleagues? Yes, Your Honor. I think it's more of the latter, in other words, where there's a mix of information. Yeah, but I want you to come back to my question. Can an officer knowingly lie about a material fact and still get qualified immunity? I think, Your Honor . . . At what point? I think in some very clear case that that would not be . . . Very clear what? What has to be very clear, that it's material or that he lied or that he intentionally lied? I think all three, Your Honor, that the facts . . . Well, that's what a lie is. It's a knowing statement of something that's untrue, and we're adding in that it's material to the issue at hand. I couldn't imagine anyone suggesting, just speaking for myself, that a law enforcement officer can knowingly go before a neutral magistrate and lie about a material fact and still think he could get qualified immunity. I agree with you, Your Honor. On the theory that there's no case on point. I agree with you, Your Honor. That would be so obvious that I don't need a case to tell me, right? Correct. But, again, I would just go back to that in this circumstance, this is not a case where the officer . . . the facts were A and the officer said B. There was a mix of information and conflicting information that the officers were not required to sift through, and that you do have to consider the particular circumstances they confronted in assessing whether the law was clearly established. Briefly, I would just like to say that we don't believe on the supervisory claims that they've been sufficiently pled. The district court found half of them were not, and the ones in the general allegations, but then in the specific counts, that those had been sufficiently alleged. Those there basically said that our supervisors knew about what happened because of what was in the investigative reports. But Iqbal is very clear that knowledge of what your subordinate did is not sufficient to establish supervisory liability under 1983. Thank you. Counsel? Thank you. Mr. Whitelock. Good morning. May it please the court. Christopher Whitelock on behalf of FDLE Supervisory Agent Robert Breeden. The issue with respect to the brief filed by Appellant Breeden is whether the district court erred by determining specifically that Apley Peters had satisfied the Twombly Iqbal standard and properly set forth a supervisory liability claim against Appellant Breeden pursuant to Section 1983. Our position is after the . . . So that wasn't a genuine issue of material fact determination. It was solely on the pleadings? Yes, Your Honor. And this had gone through a series of rounds, if you will, in terms of trying to reach that threshold, legal threshold, in terms of submitting a supervisory claim against Appellant Breeden. And I certainly don't have to go over the legal standard in terms of what should have been done, but what should have been done was the court should have stripped away all of the legal conclusions, if you will, in accordance with Twombly and Iqbal. And I think where it got a little messy below is that the court in our position attributed well-pleaded allegations when they were truly legal conclusions. And the court below concentrated on seven paragraphs in the joint consolidated pleading. And when you really break down those seven paragraphs, and for the record, they were paragraphs 79, 85, 173, 179, 267, 337, and 343. And if you take those numbers, if you will, there's really only one paragraph attributable to Appellant Breeden in terms of what, if anything, he did to rise to the level of supervisory liability in terms of pleading a claim and, of course, piercing his veil of qualified immunity. And paragraph 173 is the same as paragraph 79, 267, 337, and 343. And 85 and 179, those paragraphs have nothing to do with Appellant Breeden. And when you go through what was pled in that paragraph, 173, Your Honor. And there's basically three subsections to those. And if you go through the subsections, for example, in the first one it states, actively participated in supervising the agent's alleged unconstitutional conduct. Conclusory. No facts whatsoever. Subsection 2 discusses directing Mulvey to engage in unconstitutional conduct. Again, no facts, nothing that would push it into the plausibility category as required by Twombly and Iqbal. You go into subsection 3 and it actually invokes a deliberate indifferent standard for a Fourth Amendment claim. But nevertheless, taking it in the light most favorable to the plaintiff and establishing whether or not it complies with Twombly and Iqbal. The allegation that an agent, or supervisory agent in this case, acted with deliberate indifference is again, conclusory. In fact, we cited Franklin B. Curry in our moving brief. And that was a phrase, if you will, that this court specifically determined carries no weight. Now, again, candor to the tribunal. There are differences as you go into that third subsection that deal with things that warrant, or allegations that warrant in the preceding complaint. And I think it's notable that the court, in paragraph 25, and not to get confused with all these numbers, but rejected as not complying with Twombly a number of allegations that, in this particular case, Appley Peters asserted, such as knowing and approving and participating, such as misrepresenting evidence, manipulating evidence, deliberately ignoring substantial exculpatory evidence, rather. Those were all rejected. And then what it looks like they did is they reshuffled the deck, so to speak, used a bunch of equivalent type of terms, but yet there's no facts as required by Twombly and Iqbal. What's the most specific subsection that you want to devote your time to because it's your biggest burden? Well, I think specifically, Your Honor, and to move right to that point, is if you look into the third subsection, and again, like I was stating before in candor to the court, you'll see that there are allegations that Appellant Breeden was made aware by Mulvey. Appellant Breeden was made aware by the investigative reports. Breeden was aware by the evidence. And again, it goes into the approved and allowed type of averiment, which not only is it the same if you want to reshuffle it as was what's in paragraph 25, but again, there's no factual enhancement as required by Twombly and Iqbal. For example, what reports? How was he made aware? What, if anything, did Mulvey say? Breeden was aware by the evidence. What evidence, if any? And again, the approved and allowed averiments in there, again, if they're going to invoke the deliberate indifference standard, how is there this knowledge of substantial risk with any facts? If they're going into falsifying, as the court had some inquiries about an affidavit, there's no facts about that. Again, it just seems like what they did in the pleading is take the same type of phrases that were rejected before, kind of reshuffle them and use some synonyms and some equivalent terms to try and get around the Twombly-Iqbal standard. It doesn't matter whether they were rejected before or not. We judge them based on their sufficiency now. I agree, Your Honor. The point I was trying to make is that the allegations that were actually rejected by the district court in paragraph 25 are practically the same as those that are in paragraph 173, but yes, I agree with the court. I see my time is up. Thank you. Thank you. Mr. Hanna. Three to one today, Mr. Hanna. I like those eyes, Your Honor. You've got the same time to use, however, that they did. 30 minutes. I don't know if I need all that time, but I appreciate the time. You will not be punished for not using it. Like if I go short? Yeah. We can start the weekend early, right? Could you, because we've heard so much, while it's fresh, could you address paragraph 173 and his argument as to Breeden? As to Breeden, I believe our position is that Judge Leonard below rightfully decided that there were sufficient facts pled to at least plausibly allege a cause of action. I think that's what's required by Iqbal and Twombly. The facts that were pled as to Breeden and also as to Sullivan, the other supervisor, were that in those paragraphs that they were made aware of the situation of the falsity of the information or the exculpatory information that was left out of the affidavit from Mulvey and Loyal directly, from them personally, that they reviewed the reports. But do the allegations against, let's take Breeden, specifically say what the false information they were made aware of is? I believe the allegations were they made aware of all of the false information in the report. One of the false. They were made aware of the following statement in the affidavits and its falsity by so-and-so. No, it doesn't go into that specific detail. Doesn't Iqbal and Twombly require it? I don't think it requires that much specificity. Iqbal and Twombly is just a plausibility issue. As long as there's factual allegations, and those are factual allegations. No, it didn't sound like it to me. They were made aware of the falsity of the statements in the affidavit. That sounds very general to me. That's not what it says, though, in the complaint. Tell me the most specific statement, the best for your case, against Breeden. That they were made aware... Let me see if I can get the actual paragraph for you, Your Honor, so give me a moment. It's a paragraph. I'm going to go to, Your Honor, paragraph... There's repeated paragraphs throughout the complaint. These are all very similar paragraphs. The allegation that I'm going to focus on, because I have it in front of me, is paragraph 79 and 80. These deal with Breeden as to Paez, but we understand that Judge Leonard ruled that Mr. Breeden was not specifically a supervisor of Mulvey as to Paez and as to Diaz, but was as to Lyndene Peters. But the same allegations in the Lyndene Peters account are alleged. And I believe that would be probably paragraphs... 173 and 179. Yeah, he focused on 173 and said that... 173 is where we allege that Breeden was made aware by Mulvey and her investigative reports and by his review of the evidence and testimony garnered during the investigation of the true facts and exculpatory conflicting evidence that Paez, and I'll say Peters for this particular case, had not in fact committed any crime. Breeden, with knowledge that there was insufficient evidence that any crime had been committed, reviewed, approved, and allowed Mulvey to make the deliberately false misleading statements in her arrest... His argument is, and it's quite a plausible argument, is that that doesn't tell him what specific allegations in those affidavits his client was made aware were false. In other words, if you'd said every single allegation... If I had said that, maybe that... I guess the problem is, I understand your issue, Your Honor, is that we didn't specify which particular omissions or which particular false statements were relied on by Breeden or reviewed by Breeden or known by Breeden. And the way the allegations have been presented here was all of it, Your Honor, that they were aware of all of the allegations that were being made. But that sounds almost like saying they didn't have arguable probable cause to proceed. They didn't. The investigation... Yeah, but that's not sufficient pleading under Iqbal and Twombly. Well, it's a plausibility standard, Your Honor. I don't think we need to go into the specifics. No, I mean, it's plausible they didn't have arguable probable cause. It's plausible they did, but you've got to explain why to make it a fair inference. Well, we have done that with regard to Mulvey and Loyal, those allegations as to what they left out of their affidavits, how they misrepresented in their affidavits, and that goes all the way back to paragraphs. I believe 25 and specifically 29A through J. All those specifics are in there as to how they misrepresented in the affidavits, what they left out, what exculpatory information, testimony they had available to them, all of this information. I mean, if you take even Golden Beach out of the picture, I mean, Golden Beach had a separate responsibility, and we've pled that, but that's not before Your Honors today. It was before Your Honors as to what Mulvey and Loyal did and their supervisors. And Mulvey and Loyal, what they did here is present affidavits. They were aware, in a very lengthy investigation, they received statements from witnesses, including people from Golden Beach, including the town manager, Diaz, as to various issues that are actually materially direct with regard to the affidavits that they submitted to show that they were false and they admitted exculpatory information. Let me come at the question this way, Mr. Hanna, if I could. Regardless of what legal theory of supervisory liability we apply, and regardless of whether or not the pleadings were sufficiently detailed to meet the plausibility requirements of Iqbal and Toombly, there would have to be some unconstitutional acts on the part of Mulvey or Loyal before there could have been any violation by the supervisors, right? Right. So if, in fact, there was arguable probable cause for a single crime and therefore the agents were entitled to qualified immunity, there would be no theory by which the supervisors would not equally be entitled to qualified immunity, right? I would have to agree with you. That's what the law says. Okay, so let's go to the underlying conduct. I take it you would also agree that if there was arguable probable cause to support one crime that would be enough. They wouldn't have to show all four of them. I believe that's the standard. That's the case law. Okay, so tell me here more particularly why there was an arguable probable cause arising out of a criminal offense  to pay the administrative fees. As I looked at the evidence, I looked at the spreadsheets and the invoice records of the off-duty officers. I looked at the requirement to pay the fees as evinced by Captain Barozian and the financial director Camacho saying that officers working off-duty were required to pay fees for the GBPD and the same invoices that were submitted. However, if you compare the invoices submitted to the spreadsheets, there were substantial discrepancies in those spreadsheets between what was reflected as off-duty hours and what was reported. Why wouldn't there be arguable probable cause emerging from just from that? Couldn't a reasonable officer believe one of the officers owed fees for off-duty work, they were obliged to pay them, and they failed in material ways in a substantial number of instances to report off-duty work? Why wouldn't that yield arguable probable cause if you include everything new that you say should have been included with everything old that was included? Right. The Franks type of analysis. Yes, sir. Yes, Your Honor. Only with the twist, as Judge Karnes put it to you, that arguable cause under the case law is enough. So they don't even have to show that there really was probable cause. All they have to show is that a reasonable officer could have under these circumstances believed there was probable cause. And I'm asking you to tell me why a reasonable officer could not believe that there was a violation arising out of the alleged knowing, willful, and continuous failure to pay administrative fees in multiple instances. If I go to the allegations in the complaint, and we've always got to focus on that, paragraph 29, if you look at all of those, these are the events or these are the issues and omissions and failure to include certain information and evidence from the affidavits that would not even, if you put them into the affidavits, would not even make arguable probable cause. I can point out to you very specific ones. I think it's 29B. They had a sworn statement in 2010. This is Mulvey and Loyal in their investigation. Had a sworn statement from the Golden Beach Finance Director, Camacho, that these three gentlemen had actually paid and overpaid their administrative fees. They knew that. They had that information. If you put that into the affidavit, there's no crime committed because they paid everything. Or the work that they reported. That's, no, of everything. How could he know as to the work they hadn't reported? This is another issue, Your Honor. There's also a paragraph, I believe, paragraph 29D and 29E where the records that they're claiming in their affidavit are accurate or presenting as accurate. The spreadsheet was based on information that involved forgeries, involved other officers substituting their own information. Right, but let's be more particular. The spreadsheets failed to reflect off-duty hours in the following ways by Piaz, Peters, and Diaz. In the case of Piaz, it was 247 hours, $1,237 in unpaid fees, 37 dates between December of 8 and September of 9. In the case of Peters, it was 195, 199 hours, $997 in unpaid fees, 21 dates between December of 08 and September of 09. In the case of Diaz, 344 hours, $1,720 in unpaid fees, 46 dates, if I have this right, from March of 09 to December of 09. As I understand what you say, there are three additional relevant facts that were known that would have undermined or gutted PC and argued PC. One, the only written document or policy referencing charging an administrative fee was Article 29 of the CBA. Two, Diaz was a part-time employee, not covered by the CBA. Three, the Golden Beach town manager in a sworn statement said officers would regularly pay the fees. And four, Camacho says that the plaintiffs had fully paid the fees. That's the totality. Is there more than that? There's more, Your Honor. What else is there that I didn't... The spreadsheet that they're claiming is the accurate document of what they're setting forth is based on, and they knew this, was based on forged and corrupted documents, altered documents. Other police officers, there's evidence they got that other police officers went in and created documents for other police officers. There's evidence that the documents were forged. Somebody forged the documents to make them look guilty? Exactly. That's the malice and the motive here. We've pled that. Do you allege the people who forged the documents? We have not alleged the people who forged the documents. We just know that they received evidence that these documents were forged, these documents were altered, other police officers were able to go in. These were not protected documents. Do you allege that they were forged to make it appear that your clients had worked hours they had not worked? Is that the allegation? Or is there just the spreadsheet that covers more officers than your clients? Some of the information was forged. It was more officers than just our clients. I know, but do you allege that the forged information indicated and was... The forgeries were that your clients had worked more hours than they reported? We have alleged that in the complaint that there were forgeries that specifically dealt with our clients. And that made it appear that your clients had worked more hours than they had actually worked. If somebody forged it to show they worked fewer hours than they reported, you wouldn't have a claim. That's true. That's true. All right. Did you allege specifically in the complaint that the forgeries made it appear that your clients had worked more hours than they reported and that the defendants were aware that there were forgeries which made it appear that your clients had worked more hours than they reported? Not specifically as to my clients, Your Honor. I have alleged that they were forged and corrupted documents. They were not accurate documents. They knew it. They didn't disclose it. If they had disclosed that information, which we believe to be exculpatory... But if it didn't relate to these folks, what difference would that make? For purposes, bear with me, just for purposes of arguable probable cause. Right. Right. For arguable probable cause... Because that's all what... That's the irreducible minimum standard. There's also some other evidence that was also admitted on there that we failed to mention. There's also that they had done... Let's don't leave this. What good would it do your clients to establish that other folks were affected by forgeries if they don't even plead to the court that their reporting was affected by forgeries? It's going to the reliability of what they're relying on. They make a representation to the court in the arrest affidavit that the documents are accurate, that the spreadsheet is accurate when they knew it wasn't accurate. It's immaterial whether it's accurate as to other officers. Completely immaterial. Isn't it? It's not in the context of what happened here. The focus was on these officers. They weren't investigating all the officers. They were investigating my guys. I know, which means that what's material is what the forgeries were as to your guys and I understand you to say you didn't even plead there were any forgeries as to your guys. The problem is we don't know for sure until we get into discovery and all that stuff. We can't get to that point yet. We are at a pleading stage. We're at a complaint stage stating a plausible cause of action. But you don't. We're entitled to the reasonable inferences that those documents were forged as our clients as well. Why didn't you plead that inference? I guess you could have said yes I could have but I thought there was enough there, your honor. There's enough there to state a plausible cause of action. There's also another item of evidence of sculpatory information that in addition to looking at the spreadsheet they had GPS done on these officers. They had surveillance done on these officers. Taking that into consideration as to our specific officers if they had disclosed that that turned out to be a complete negative as to them doing what they were doing then that also goes . . . if you put that into the arrest affidavit that would also show that there's a lack of even arguable probable cause. Only if it contradicted the hours that the defendants thought your clients were working and hadn't reported. Right. We haven't specifically said that in the complaint. Admittedly I have not said that. However, we have said that that information that was left out of the complaint was left out of the complaint itself. We also have the information that they paid all the administrative fees. We also have information that they or they had information that from I believe it was Diaz himself saying that these officers were allowed to pay their fees late. That they didn't have to pay fees. They didn't feel that they were a victim of a crime. This is a victimless crime in this particular case that they were alleged of doing. The town of Golden Beach is not the victim of anything here. They were not aware of that. They were fully aware of that from their investigation yet they went forward with these arrest affidavits and arrested these officers and then  in the malicious prosecution. Your Honor, I do want to address this issue of the law being clearly established at the time. It did not  at the time. The case that we're talking about is the Jones versus Cannon case back in 1999. Even as recent as November of this year, there was a decision of the Pierce case. I believe it was Pierce versus 2017 Westlaw 559 3486 where they again reiterated this court reiterated its principle that  information on an arrest affidavit or failing to include material exculpatory information on an arrest affidavit. I think your colleague conceded that knowingly lying about a material matter doesn't require a particular case in point. I don't think he's really asserting quite that. I think he said that just overstates what happened and the context is critical. Right. I think we've clearly the law was clear. I think the law is clear for whatever it's worth to you speaking for myself that you can't knowingly lie about a material matter. Or even not just there was some argument made on the first argument about the issue of only fabrication and that's not enough. It's not just fabrication. Go to the Kingsland case. It's not  lying. It's also failing to include material exculpatory information. I mean the Kingsland case is actually an interesting case because there there was an investigation like here that led up to the ultimate arrest and the police officer failed to there was a lot of exculpatory information there that they failed to put in the arrest affidavit and they failed to include the issue of arguable probable cause and that there was evidence or at least evidence there that the officers lied and failed to include exculpatory information. It's not just a fabrication issue. It's also a little bit broader than that. Anyway, Your Honor, we believe that Judge Leonard, Your Honor, Judge Leonard made the correct decision here based on the pleadings, based on the complaint that's been filed. Early stages of this case, I anticipate if it gets affirmed, the decision will be back here again probably some date in the future on summary judgment probably one way or the other. But at this early stage, our position is that the complaint did state enough facts, plausible facts, number one, to establish the violations, the 1983 violation, and number two, to get past the allegations. The affidavits didn't vouch for the accuracy of the information provided by the town, and in fact, they noted specifically that the information from the spreadsheets was provided by the subject, its accuracy was dependent on the information that the town had provided, but more importantly, their own pleadings, their own attachments, are in themselves contradictory because they show, when you look at the totality of the circumstances here, that this was a year, over a year long investigation, the town was involved in this investigation for a year, the town knew what was going on here, the town never provided as they acknowledge in their notice letters to the town of Golden Beach, never did anything to dissuade these officers from the investigation track that they were on. What about the allegation that the spreadsheets themselves which provides the core showing the disparity between what they reported and what they were obliged to report was forged? Admittedly it's stated at a high order of abstraction, it doesn't particularize one officer as opposed to another, it just makes that assertion. What about the assertion itself? Again, that's not the allegation as I recall, Your Honor, the allegation is that the time  which the And we're now reading from where in the complaint? Paragraph 29F is the allegation is that the time records on which they based their claims of double compensation were completed by other officers and have been altered or changed and that the records reviewed by them were from by own acknowledgments and statements given by Skinner, Barrow, Swine, and others unreliable, misleading, inaccurate, and even forged, that's the conclusory statements. And even forged? And even forged. But more to the point,  documentation that the officers for these crimes was forged. Okay, what they're talking about is maybe some of the underlying documents, but again, back to your Honor's point about the unreported hours. They didn't fill out paperwork to report something they didn't report. So these spreadsheets could not have, they didn't get, the officers didn't get the information about the unreported hours from documents from the town. They subpoenaed those records from the actual contractors, the Des Moines group, Condit America, the companies that these officers were doing the work for. They looked at those records and they, those records showed when the officers were actually on duty, sorry, off-duty at the police department but working for these contractors and then went to the town and said do you have any records to show that anybody reported to you that these folks were working at this time. There's no allegation in the complaint that the, any records were destroyed, that anybody was shredding records in a back room and we're now into this fantasy world of conspiracy theories here. But back to the issue of arguable probable cause. We look at the totality of the circumstances here. We look at this, as Your Honor said, whether any reasonable officer under these facts  We've got that Mr. Silverman, your time's up. I thank Your Honor for your time. We would ask that you reverse the district court's denial of qualified immunity. Mr. Kirtley. Thank you. Just really briefly, again, I would just reiterate that one of the key points is while they've alleged that our officers knew about each of these things, such as the forgery and so forth, if you take a look at the closeout memo attached as Exhibit E to the complaint and the lead into that as to what was recently done in 2014 was of the town officials. So I think that's very key as to whether they've shown what we knew at the time we did those affidavits. That aside, I think that as Your Honors have asked, the allegations are not pointed enough as to in what respects and as to what officers these documents were altered or forged. And in some cases, like take sub paragraph 29E where it says in fairness they really can't do that without some evidence that they were based or among other things forged. Although what it says is they were altered or maybe even forged. But I think to undercut arguable probable cause you must show that our I think that they have to have some other knowledge to allege that we knew at that time. Thank you counsel. Mr. Whitelaw. Thank you. You put us back 58 seconds. We appreciate it. We will take that case and the others this week under submission and stand in recess.